UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

United States of America,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Roger Leigh Oehler,

Defendant. Crim. No. 02-151 (JNE/RLE)

* * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Defendant's objections to Writs of Garnishment which were issued on June 16, and September 23, 2004. Deeming oral argument unnecessary, the matter was taken under advisement on the parties' written submissions. For these purposes, the Defendant Roger Leigh Oehler has appeared pro se, and the Plaintiff has appeared by Mary L. Tripper, Assistant United States Attorney. No appearance has been made by, or on behalf of, the 3M Voluntary Investment and Employee Stock Ownership Plan, which is the Garnishee.

For reasons which follow, we recommend that the garnishee be directed to pay to the Plaintiff, from the Defendant's property that is in the garnishee's possession, custody, or control, an amount not to exceed ten thousand dollars ($10,000.00), as levied by the Writ of Continuing Garnishment that was issued on June 16, 2004. However, we recommend that the Writ of Continuing Garnishment, which was issued on September 23, 2004, in the amount of three thousand four hundred thirty-five dollars ($3,435.00), be quashed since it relates to "special assessment fees," which are not enforceable, against an ERISA plan, under the Mandatory Victim Restitution Act of 1996 ("MVRA"), Title 18 U.S.C. §3613(a).

## II. Discussion

On December 16, 2003, the Defendant was sentenced to thirty-three (33) months in prison, and was ordered to pay two hundred one thousand seventy-seven and 99/100's dollars ($201,077.99) in restitution, and three thousand five hundred dollars ($3,500.00) dollars in special assessments, after being found guilty of thirty-one (31) Counts of Fictitious Obligations, in violation of Title 18 U.S.C. §514(a)(2), and four (4) Counts of False Statements, in violation of Title 26 U.S.C. §7206(1). Declaration of Nancy Lair ("Lair Decl."), Exh. A, at pp. 1, 2, and 5. A sum of ten thousand dollars ($10,000.00) was awarded in restitution, and the a special

assessment, in the amount of three thousand five hundred dollars ($3,500.00) was made immediately payable. Id., Exh. A, at pp. 1 and 5.

The Defendant did not make the payment within the prescribed time and, on March 1, 2004, the Government transmitted to the Defendant a "Delinquency Notice," which informed him that it had not received the ordered restitution, and special assessment fee, and directed him to pay those amounts immediately, along with a delinquency penalty, or risk incurring additional delinquency penalties. The Notice also informed the Defendant that his failure to repay the Judgment debt could result in "garnishment of your wages, execution of real and personal property, or other means allowed by law." Id. at Exh. C. Then, on June 10, 2004, the Government sent the Defendant a "Default Notice," which informed the Defendant that, if he failed to repay the Judgment debt, it would "enforce the collection of the judgment debt as allowed under the Federal Debt Collection Procedures Act." Id. at Exh. D.

The Defendant did not pay the Court imposed payments and, on June 15, 2004, the Government filed an application for a Writ of Garnishment pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), see Title 28 U.S.C. §3205, and, on June 16, 2004, we issued a Writ of Garnishment on the Garnishee for property contained in the Defendant's 401(k) account, in an amount not to exceed ten thousand dollars

($10,000.00), which represented the amount of money immediately owed by the Defendant for restitution. Id. at Exh. E. On September 23, 2004, we issued a second Writ of Garnishment on the Garnishee, again for property contained in the Defendant's 401(k) account, in an amount not to exceed three thousand four hundred thirty-five dollars ($3,435.00), which represents the amount owed by the Defendant in special assessment fees. Id. at Exh. F. The Garnishee answered both Writs of Garnishment by identifying itself as an employee benefit plan that is governed by the Employee Retirement Income Security Act of 1974, and averred that the value of the Defendant's non-earnings property, which was in its custody and control, was twenty-six thousand one hundred ninety-three and 26/100's dollars ($26,193.26), as of October 15, 2004. Id. at Exh. G and H. The Writs directed the Garnishee to retain funds sufficient to satisfy the identified debts.

The Defendant has since filed an objection to the Writs of Garnishment, and requested a transfer of the proceedings to the District of South Dakota where he is presently incarcerated. The Defendant also contends that he does not owe the debt, and that his pension accounts are exempt from garnishment. On January 11, 2005, we issued an Order for a Briefing Schedule on the Defendant's objections. At this time,

we have received submissions from both the Government, and the Defendant, concerning the Defendant's initial objections, as well as his newly identified objections.

## II. Discussion

The Defendant voices several objections to the Plaintiff's Garnishment, as he has expressed them in a "Commercial Affidavit" that was received by the Court on February 15, 2005. Read indulgently, we interpret the document as a statement of the grounds for the Defendant's objections, as to which the Defendant bears the burden of proof. See, Title 28 U.S.C. §3205(c)(5). The vast majority of the objections are entirely unfounded, and warrant little, if any, discussion as to their merits. Nevertheless, we address each of the Defendant's objections in turn.

### A. The Defendant's Jurisdiction and Venue Objections.

The Defendant asserts that he "did not give power of attorney nor authority for the UNITED STATES ATTORNEY to proceed in a manner commercial contract nor was UNITED STATES ATTORNEY given nor do they have venue and jurisdiction in this matter." Commercial Affidavit of Roger Leigh Oehler ("Defendant's Commercial Aff."), at ¶3 [emphasis in original]. Contrary to the Defendant's assertions, the Writs of Garnishment bear no relation to a "commercial contract." Further, as to jurisdiction and venue, the Defendant's conviction, sentence,

and order of restitution, were all properly issued in this State and District, see United States v. Oehler, 116 Fed. Appx. 43, 2004 WL 2676441 (8th Cir., November 23, 2004) (affirming the Defendant's conviction); the garnishment action has been brought under Federal law; and we find nothing in the Record which establishes that the Defendant has changed his domicile to South Dakota, by virtue of his incarceration there, or by any other exceptional circumstances. Accordingly, both jurisdiction and venue are proper in this Court. See, Title 28 U.S.C. §§1331, 1391; Jones v. Hadican, 552 F.2d 249, 250 (8th Cir. 1977), cert. denied, 431 U.S. 941 (1977)(finding that the plaintiff had not rebutted the presumption that he retained his pre-incarceration domicile by alleging that his "legal residence" was his place of incarceration). Accordingly, those objections are without merit.

B. The Defendant's Objections Based on Minnesota State Law.

The Defendant asserts that "Minnesota State Statute prohibits attachment to 401(k)." Defendant's Commercial Aff., at ¶5. However, the Defendant has failed to identify any Minnesota Statute that supports such an assertion, and our independent research has not uncovered one. Accordingly, we also find this objection to be meritless.

C. The Defendant's Objections Based on Title 5 U.S.C. §553.

The Defendant has objected to the Writs of Garnishment because he "does not see any law or notice of obligation in accordance with 5 U.S.C. [§]553 with the Federal Register." Defendant's Commercial Aff., at ¶14. The objection is groundless, since Section 553 applies solely to the procedural requirements for administrative rulemaking, and the Defendant has not identified any administrative rules that are invalid, and whose invalidation would undermine the enforcement of the Writs of Garnishment.

D. The Defendant's Objections Based on Title 15 U.S.C. §§1505(a), and 1510.

The Defendant also objects to the Writs of Garnishment based on the Government's "disregard" of Title 44 U.S.C. §1505(a), and 1510(b). Id., at ¶¶15-17. The Defendant cites Section 1505(a) for the proposition that "all penalty statutes must have implementing regulations," and he then asserts that the absence of any "implicating regulations or statutes" renders the Writs of Garnishment unenforceable. However, our review of Section 1505(a) reveals that the Defendant has substantially misquoted, and mischaracterized that provision, and that his objections are devoid of merit. Notably, Section 1505(a) relates exclusively to the publication of documents

in the Federal Register. Similarly, Section 1510(b) is wholly inapposite, since it relates to the publication of the Code of Federal Regulations.

E. The Defendant's Objections Based on the Government's Failure to Respond to His Requests For Debt Collector Disclosure Statements.

On July 2, 2004, July 31, 2004, and January 31, 2005, the Defendant transmitted requests to the Government for a "Debt Collector Disclosure Statement," along with a form which was entitled "Debt Collector Disclosure Statement," and was further denominated as "Respondent's Private International Remedy Demand No. RLO-070104-JD" See, Docket No. 133; see also, Defendant's Commercial Aff., at ¶¶6-8. The Government did not respond to those requests, and the Defendant, presumably, objects to the Writs of Garnishment based on that failure. Notably, the "Debt Collector Disclosure Statement" form contains a provision, which reads, in part, "Debt Collector's claim will not be considered if any portion of this Debt Collector Disclosure Statement is not completed and timely returned with all required documents, * * * made in accordance with law and codified in the Fair Debt Collection Practices Act at 15 U.S.C. §1692 et seq. * * *." Docket No. 133.

Unfortunately for the Defendant's argument, although we make no findings as to the general effect of the "Debt Collector Disclosure Statement," we do find that the

failure of the Government to return the completed form does not constitute a valid objection to the Writs of Garnishment. Notably, the Government is not a "debt collector" as that term is defined in the Fair Debt Collection Practices Act, see Title 15 U.S.C. §1692a(6)(C) ("The term 'debt collector' * * * does not include * * * any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties."), and therefore, the provisions cited in the "Debt Collector Disclosure Statement" form have no application to the Government.

F. The Defendant's Objections Based on the Internal Revenue Code.

The Defendant also cites to numerous provisions of the Internal Revenue Code as bases for invalidating the Writs of Garnishment. Defendant's Commercial Aff., at ¶¶18 and 19, citing Title 26 U.S.C. §§7805, 7201, and 7212. Again, those statutes are completely inapposite, since the Writs of Garnishment were issued for the collection of restitution and special assessment fees, rather than for the collection of taxes.

E. <u>The Defendant's Civil Rights Based Objections</u>.

Further, the Defendant asserts that the law does not allow the Government to "override one's civil and constitutional rights as described in 42 U.S.C. [§]1983, 18 U.S.C. [§]242, 18 U.S.C. [§] 245." While it is true that Government actors may not deprive a person of constitutionally and statutorily protected rights, the Defendant has provided no basis to demonstrate that those rights have been violated by the issuance of the Writs of Garnishment against his pension account. Accordingly, the Defendant's objections, which are based on Section 1983, and Sections 242, and 245, are without merit.

F. <u>The Defendant's Objections based on the Uniform Commercial Code</u>.

The Defendant's assertion, that the Government may not adopt a law which "preempts a natural citizen of one's rights if one reserves all rights without prejudice UCC 1-207," is also without merit. The Uniform Commercial Code ("UCC") is limited to commercial contracts, and therefore, is entirely irrelevant to the validity of the Writs of Garnishment, which are at issue here, and which were issued

pursuant to the FDCPA for unpaid restitution and special assessments, as opposed to being predicated on a commercial contract.[1]

G. The Defendant's Objections Based on the Federal Employee Retirement Income Act's ("ERISA's") Anti-Alienation Provision.

The Defendant maintains that the anti-alienation provision, which is contained in ERISA, prohibits the garnishment of funds from his 401(k) account. According to ERISA, "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Title 29 U.S.C. §1056(d). In Guidry v. Sheet Metal Workers National Pension Fund, 493 U.S. 365, 376 (1990), the Supreme Court recognized that the provision provides a general bar to the garnishment of funds from an ERISA qualified pension plan, and that it "reflects a considered congressional

[1]On March 8, 2005, we received a submission from the Defendant, in which he asserts that "[t]he commercial agents, officers of the STATE, any FOREIGN CORPORATION, THIRD PARTY, or FEDERAL ORGANIZATION have made a fraudulent commercial claim against my Character," and in which the Defendant declared himself competent, and all others incompetent. The Defendant signed the submission under the authority of the Uniform Commercial Code, Section 1-207. Docket No. 140. Even though the Defendant's submission was untimely, and the Government has not responded to its substance, we consider the Defendant's assertions and, consistent with the foregoing analysis, we find them to be inconsequential verbiage, which has no impact on the validity of the Writs of Garnishment.

policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if the decision prevents others from securing relief for the wrongs done to them." As a result, the Court refused to "approve any generalized equitable exception -- either for employee malfeasance or for criminal conduct -- to ERISA's prohibition on the assignment or alienation of pension benefits," and provided that, "[i]f exceptions are to be made, it is for Congress to undertake that task." Id.

Subsequent to Guidry, Congress passed the MVRA, which included the following provision:

> The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including Section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that --
>
> (1) property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law;
>
> (2) section 3014 of chapter 176 of title 28 shall not apply to enforcement under Federal law; and

> (3) the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to the enforcement of the judgment under Federal law or State law.

Title 18 U.S.C. §3613(a).

The statute goes on to provide that, "[i]n accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution." Title 18 U.S.C. §3613(f).

Reading the provisions together, the MVRA provides a Congressionally mandated exception to ERISA's anti-alienation provision for "a judgment imposing a fine," or "an order of restitution," and therefore, "makes clear that the government may enforce a criminal fine or restitution order against all of a defendant's property, 'except for property which would be exempt from a levy for the payments of federal income taxes.'" United States v. James, 312 F. Supp.2d 802, 805 (E.D. Vir. 2004), quoting United States v. Rice, 196 F. Supp.2d 1196, 1199 (N.D. Okla. 2002). Such property includes an ERISA qualified pension account. United States v. Tyson, 242 F. Supp.2d 469, 471 (E.D. Mich. 2003)("A criminal defendant's interest in an ERISA qualified pension plan does not fit within any of the exceptions listed in [Section] 3613(a)(1), or within any other statutory exception created by the [Federal Debt Collection Procedures Act]."); Untied States v. Garcia, 2003 WL 22594362 at *3 (D.

Kan., November 6, 2003)("ERISA plans are not among the enumerated exemptions incorporated into Section 3613."). "Accordingly, * * * [Section] 3613 is an express statutory exception to the anti-alienation provision of ERISA found at 29 U.S.C. §1056(d)(1)." Id. at 474.

Here, the Government is seeking to enforce two Writs of Garnishment against the Garnishee, which identifies itself as "an employee benefit plan governed by [ERISA]." Lair Decl., at Exh. G and H. The first Writ of Garnishment, which was issued on June 16, 2004, was levied against the Garnishee as a result of the Defendant's nonpayment of an Order of Restitution that was imposed upon him by the District Court following his criminal convictions. Clearly, pursuant to Section 3613(a), the Writ of Garnishment is enforceable against the Defendant's pension account.

The second Writ of Garnishment was issued on September 23, 2004, as a result of the Defendant's nonpayment of special assessment fees that were also imposed upon him by the Court following his criminal convictions. Neither the Government, nor the Defendant, have distinguished the applicability of Section 1056(d)(1) to the first Writ of Garnishment, which is related to the nonpayment of restitution, from the second Writ of Garnishment, which is related to the nonpayment of special assessment

fees. Nevertheless, the strict construction of Section 1056(d)(1), which was afforded by Guidry, counsels such a distinction, so as to determine whether Congress has identified an exception to that provision for special assessment fees. See Guidry v. Sheet Metal Workers National Pension Fund, supra at 377 ("[T]he identity of any exception [to Section 1056(d)(1)] should be left Congress."). Notably, while Section 3613, by its express terms, creates a congressionally mandated exception to Section 1056(d)(1) for "a civil judgment," "a judgment imposing a fine," and "an order of restitution," it is silent with respect to special assessment fees.

However, reading this statute in para materia with Title 18 U.S.C. §3013(b), which provides that special assessments "shall be collected in the same manner that fines are collected in criminal cases," it could be argued that Section 3613 should be interpreted in such a way as to include "special assessments" in the exceptions to Section 1056(d)(1). While such an interpretation is arguable, it is, nonetheless, inconsistent with the existing case law, see United States v. Tyson, supra at 473 ("[T]he government is not entitled to garnish any portion of [a defendant's] pension fund to satisfy [a] * * * special assessment imposed at sentencing."); United States v. Garcia, supra at *3, n. 2, and contrary to the intent of Congress, as that intent was interpreted in Guidry v. Sheet Metal Worker's National Pension Fund, supra at 376

("We do not believe that congressional intent would be effectuated by reading [a] * * * general reference [contained in another statute] * * * as overriding an express, specific congressional directive that pension benefits not be subject to assignment or alienation.").

The language contained in Title 18 U.S.C. §3611, also weighs against reading the term "special assessments" into Section 3613. In that Section, Congress specifically distinguished special assessments from fines and restitution, noting that "[a] person who is sentenced to pay a fine, assessment, or restitution, shall pay the fine, assessment, or restitution * * * ." Considering that Section 3611 is contained within the same Chapter and Subchapter as Section 3613, the construing of a "special assessment" to be either a "fine," or "restitution" -- for the purposes of Section 3613 -- would render the term "assessment," as it is employed in Section 3611, superfluous.

Accordingly, we are persuaded that, in reading the Act as a whole, Congress intended the term "assessment" to be distinct from either a "fine," or "restitution," see, Leocal v. Ashcroft, --- U.S. ---, 125 S.Ct. 377, 384 (2004)("[W]e must give effect to every word of a statute wherever possible."), citing Duncan v. Walker, 533 U.S. 167, 174 (2001), and that, had it so intended, Congress could have included "special assessments" within the enforcement authority created by Section 3613. Since

Congress did not, we should not legislate an exception to Section 1056(d)(1) so as to include special assessment fees. Therefore, we conclude that the Writ of Garnishment, which was issued on September 23, 2004, for the recovery of the Defendant's unpaid special assessment fees, must be quashed.

H. The Defendant's Remaining Objections.

The Defendant's remaining objections include such comments as "[t]he [Defendant] states that [Defendant] has no signed contract with Internal Revenue Service," Defendant's Commercial Aff., at ¶9, "the [Defendant] does not see any law authorizing Officers of the Federal, State, or the City to make a legal determination for [Defendant]," id. at ¶22, and "[t]he [Defendant] does not see any reason the Officers are not commercially liable under 70 AmJur 2nd VII. Civil Liability 90-180 A. In General 90-147, 1. General Principles 90-95." Id. at ¶23. Such statements are nonsensical, at best, and have no legal effect on the enforceability of a Writ of Garnishment. Any further discussion of those objections is obviated by our finding that the procedures employed by the Government in obtaining the Writ of Garnishment fully complied with the FDCPA.

On March 1, 2004, the Government served the Defendant with a "Delinquency Notice," which informed him that his failure to pay the restitution and special

assessments, which were owed, might result in "collection by garnishment of your wages, execution on real and personal property, or other means allowed by law." Lair Decl., at Exh. C. Subsequently, on June 10, 2004, the Government sent the Defendant a "Default Notice" which, again, notified him that, "[i]f you fail to repay the judgment debt, we will enforce collection of the judgment debt as allowed under the Federal Debt Collection Procedures Act." Id. at Exh. D. The Government then filed an Application for a Writ of Garnishment, in compliance with Title 28 U.S.C. §3205(b), and a Writ was issued by this Court pursuant to Section 3205(c). Id. at Exh. E. The Writ was personally served upon both the Garnishee, and the Defendant, in accordance with Section 3205(c)(3), see Docket No. 28, and the Garnishee answered in accordance with Section 3205(c)(4), see Lair Decl., at Exh. G, while the Defendant objected to the Garnishee's Answer in accordance with Section 3205(c)(5). A briefing schedule was issued, so as to allow the parties to submit arguments, and those arguments have now been reviewed by this Court. Therefore, having determined that the process adopted by the Government, in obtaining and enforcing its Writ of Garnishment for the unpaid Order of Restitution, was fully compliant with the FDCPA, we find the remainder of the Defendant's objections to be without merit.

NOW, THEREFORE, It is –

RECOMMENDED:

1. That the Garnishee be directed to pay the Plaintiff, in care of the United States Clerk of Court, 202 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, by checks or money orders made payable to the "U.S. Clerks of Court," property of the judgment debtor in your possession, custody or control, up to the amount of ten thousand dollars ($10,000.00), as levied upon by the Writ of Continuing Garnishment issued on June 16, 2004.

2. That the Writ of Continuing Garnishment, which was issued by the Court on September 23, 2004, in the amount of 3,435.00 dollars be quashed.

Dated: March 24, 2005

s/Raymond L. Erickson

_ Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than April 8, 2005**, a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than April 8, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.